# CHARLESTON.

GOFF *v.* GOFF.

Submitted June 10, 1903—Decided December 5, 1903.

1. DIVORCE—*Alimony.*

     In a suit for divorce the question of allowances to the wife for maintenance *pendente lite* and to enable her to carry on the suit, to be paid by the husband, is within the sound discretion of the court or judge in vacation under section 9, chapter 64, Code, and the exercise of this discretion, which is a very broad one, will not be reviewed unless it is made to appear that it has been grossly abused. (p. 371).

2. DIVORCE—*Alimony—Receiver.*

Wherein a suit for divorce and alimony by a wife the allegations of the bill and the record show the defendant to be the possessor of an estate worth from $75,000 to $80,000, composed largely of real estate, and the defendant has been enjoined in the suit from disposing of any of his real estate and has responded to an order in the cause requiring him to pay a specified sum for temporary maintenance of plaintiff and expenses of carrying on her suit. *Held,* the appointment of a special receiver by the judge in vacation to take charge of the personal property of the defendant is an abuse of judicial discretion. (p. 372).

3. TRUST COMPANY.

When a Trust Company which is properly doing business under the laws of this State shall be appointed a special receiver in any case or proceeding it is not required to give bond; the capital of such company, together with any deposits required to be made by it, with any officer or officers of the State, whether such deposits be a part of said capital or not, are to be taken and considered as the security required by law for the faithful performance of its duties. (p. 373).

Appeal from Circuit Court, Randolph County.

Action by Louise L. Goff against Charles P. Goff and others. From decree and orders entered, defendant Goff appeals.

*Reversed.*

W. B. MAXWELL and L. GREYNOLDS, for appellant.

C. W. DAILEY, E. D. TALBOTT, and T. P. R. BROWN, for appellee.

McWHORTER PRESIDENT:

On the 10th day of February, 1902, Louise L. Goff presented her bill in chancery, in vacation to the judge of the circuit court of Randolph County, verified by her affidavit, against her husband, Charles P. Goff, Charles M. Kittle, the Elkins National Bank *et al.,* debtors of said Charles P. Goff, praying for a divorce from bed and board against the said defendant Goff, for cruel and inhuman treatment, reasonable apprehension of bodily hurt and other matters alleged and set out in her bill and for alimony and for money to carry on and prosecute her suit, and praying that the court would commit the custody, care and manage-

ment of the said defendant Goff's large estate to some competent person that the same might be protected and preserved in the interest of plaintiff and of said Goff, and others who might have an interest therein; that the defendants who were debtors of said Goff and all other persons be restrained and enjoined from paying to him any of the money they owed him; that a deed made by Goff to the defendant Kittle, dated the 20th of August, 1901, for an undivided moiety in the undivided one-fourth interest owned by said Goff in the 6606 acre tract of land known as the Goff-Arnold land, for the reasons set out in the bill be annulled, vacated and set aside and the said Kittle enjoined and restrained from selling or conveying the interest in said land so conveyed to him by Goff; that the gift or supposed gift of the diamond ring by said Goff to Kittle be canceled and set aside and declared null and void, and that Kittle be required to surrender and deliver possession of said ring to some suitable person to be named by the court to be held by such person to answer any further order or charge touching the same, and that the court will make such provision for the maintenance of said Goff out of his estate as might be proper; and that Goff be enjoined and prevented from imposing any restraint upon the personal liberty of the plaintiff and for general relief.

Whereupon the judge made an order granting the injunction prayed for and appointed Kent B. Crawford a receiver to take charge of the diamond ring and directed the defendant Kittle to surrender the same to Crawford who was required to give bond in the penalty of $800, to have the ring forthcoming to answer any future order of the court respecting the same, and further ordered the defendant Goff, to pay the plaintiff $500 to enable her to carry on her suit and for temporary maintenance. On the 22d day of February, 1902, the judge of said court made another order in said cause reciting that plaintiff had presented to him in vacation her bill, verified by affidavit praying for a divorce from bed and board against the defendant Goff, for alimony and other matters of relief therein specified, and that it appeared that process to answer said bill had been regularly sued out of the clerk's office of said court and duly served upon all the defendants and reciting that the vacation order made on the 10th of February, 1902, inadvertently directed said Goff to pay to the plaintiff $500 to carry on this suit and for temporary main-

tenance, without any notice to said Goff of plaintiff's intention to ask for said sum. On motion of the plaintiff it was ordered, that that part of the order which directed the payment of said sum of money be set aside and annulled, and it further appearing from affidavits filed that the defendant, Charles P. Goff, on the 10th day of February, 1902, left his residence and the town of Beverly, and that the only persons occupying his residence were defendant Charles M. Kittle and a small boy who were absent from the premises a great part of the time leaving the house and effects therein uncared for and unprotected, it was further ordered that the defendant Charles P. Goff, his agents, servants and representatives be restrained and enjoined from preventing the plaintiff from returning to said residence and dwelling therein if she should elect so to do for the purpose of preserving and caring for the same and the household goods, furniture and chattels therein, with full power to control in said house as to its occupancy and management for the said purposes during the absence of said Goff from said residence. The restraining order of February 10th, was so modified as to permit the debtors of Goff to pay their indebtedness to the general receiver if they should elect so to do, taking proper receipts therefor from said receiver, and provided that a copy of said order of the 22d of February be served upon the defendants in the cause.

The defendants, Charles P. Goff and Charles M. Kittle, filed their separate answers. A large number of depositions were taken and filed in the cause by both plaintiff and defendant Goff, and on the 16th day of May, 1902, the cause was heard in court upon process duly executed upon all the defendants, the answers of Goff and Kittle and general replications thereto and the depositions and exhibits taken and filed in the cause and upon the orders theretofore entered, but the court not then being ready to dispose finally of the cause on its merits it was heard upon the motion of the plaintiff for an allowance for temporary maintenance and also for expenses and attorney's fees in the prosecution of the suit when it was ordered and decreed that plaintiff be allowed the sum of $60 per month, beginning January 21, 1902, for her support and $500 on account of costs and attorney's fees in prosecuting her suit to be paid out of the moneys coming into the hands of the general receiver of the

court from payments made to him by Goff's debtors. It was further ordered that any debtor of Goff might pay to plaintiff moneys not exceeding the amount specified in the order and take receipts from plaintiff for such sum; and on the 15th day of July, 1902, in vacation, the judge of said court in pursuance of a notice served upon defendant Goff, on the 7th day of July, heard the motion of plaintiff to appoint a special receiver in the cause to take charge of the personal property of the defendant Goff, when the notice of such motion was filed together with the affidavit of plaintiff, Louise L. Goff, which motion to appoint such receiver was resisted by the counsel of Goff, who was present at the hearing. Upon the hearing of the motion the court appointed the Trust Company of West Virginia, at Elkins, special receiver of the personal property and effects of defendant Goff, with power and authority to collect such outstanding indebtedness as was due or might become due, of said Goff and especially the claim due from Mabie-McClure and Stephenson, mentioned in the affidavit of plaintiff, and the judge being informed by counsel for defendant Goff, that they had in their hands sufficient money furnished by Goff to pay such alimony as had been awarded to plaintiff by the court and put in their hands for that purpose they were directed to pay the same to plaintiff or her attorneys. These are all the orders or decrees entered in the cause.

The defendant Goff, appealed to this Court and insists that the court erred in entering each and all of said orders and decrees. The first order that was entered on Febraury 10, 1902, in so far as it allowed $500 to the plaintiff before the issuing and service of process in the cause was null and void, to the extent only, of such allowance, "The judge had no jurisdiction to enter a decree for alimony *pendente lite* or permanent alimony without first in some manner summoning the husband to appear and thus affording him an opportunity to be heard; and should such a decree be entered without first citing the husband a writ of prohibition will lie to prevent its enforcement." *Coger* v. *Coger,* 48 W. Va. 135, (35 S. E. 823). It is contended by appellant's counsel that the judge had no jurisdiction in vacation and without notice to Goff to review the order of February 10th, and cite section 1, chapter 134, Code. That section has reference to the correction of orders and decrees in which errors of the nature

mentioned have occurred and not to orders and decrees which were without the jurisdiction of the judge or court and are simply nullities. Prohibition lies where there is an effort to enforce or where there may be an attempt to enforce a void order or decree. The court could at any time in term, on motion, or on its own motion, have set aside the order of February 10th, as null and void. The judge by his attempt in vacation to set it aside showed that he did not propose to enforce it. The case has not been heard nor passed upon by the circuit court upon its merits and the appellate court can only consider such questions as are brought before it upon the four orders entered in the cause and complained of. Section 6, chapter 64, Code, provides that "A divorce from bed and board may be decreed for cruel or inhuman treatment, reasonable apprehension of bodily hurt, abandonment, desertion, or where either party after marriage becomes a habitual drunkard." Section 7 of the same chapter gives chancery jurisdiction in all matters pertaining to divorce suits to the circuit courts, and section 9 provides: "The court in term, or the judge in vacation, may at any time pending the suit, make any order that may be proper to compel the man to pay any sum necessary for the maintenance of the woman, and to enable her to carry on the suit, or to prevent him from imposing any restraint on her personal liberty. * * * Or to preserve the estate of the man so that it be forthcoming to meet any decree which may be made in the suit or to compel him to give security to abide such decree."

It is insisted by appellant's counsel that the judge of the circuit court, by the order of February 22, erred in appointing plaintiff receiver of the real estate of defendant, and without requiring bond and security as provided in section 28, chapter 133, Code. The order is very peculiar; it does not in terms appoint plaintiff receiver of the home and effects therein of defendant, and yet it takes the custody and control of it from the agents and employes of defendant and places plaintiff in the custody thereof with full control in and during the absence of defendant, although it changed the possession of the residence and effects therein for the time being the order does not clothe her with all powers and duties of a special receiver of the property, and it was evidently not the purpose to appoint her as such receiver, as her occupancy is limited by the language of the order to the

time that the defendant remained absent and it is fairly implied that upon his return she shall relinquish her occupancy or possession. Whether this should be construed as appointing her receiver or not, no motion was made to set aside this *ex parte* vacation order and under the decision of this Court no appeal will lie therefrom until such motion has been made and overruled. "An *ex parte* order granting an injunction is not appealable until after a motion made to vacate or set it aside." *Brast* v. *Oil Co.,* 46 W. Va. 613. In the opinion in that case it is said: "It is not an adjudication between parties. One side has not been heard, and until he moves the court that granted the injunction to correct it, he has no right of appeal. Appeals are to correct errors committed after hearing, and not review mere preliminary orders made in the absence of one of the litigants. Such orders are still in the breast of the court until finally heard and determined. The party affected thereby has an easy remedy by motion and an appeal will not lie until such motion proves ineffectual." 11 Enc. Pl. & Pr. 96; *Aldinger* v. *Pugh,* 57 Hun. 181; 10 N. Y. Supt. 684, and other authorities there cited. In case of *Clark* v. *Bryan,* 48 W. Va. 271, there was held to be "An appeal improvidently awarded to an *ex parte* vacation order made by the judge of the circuit court awarding an injunction and appointing a receiver." This case is referred to by counsel for appellant as a case in point, but which it was claimed was abandoned by counsel for appellant and was not argued in the appellate court and the attention of the court was not called to the authorities which the counsel claim fully sustained their views to the contrary. Why counsel chose to abandon an appeal which was, according to their contention well taken and was supported by the authorities is not made to appear. The case of *Clark* v. *Bryan* has not been overruled and stands as the authority of this appellate court to the effect that "An *ex parte* vacation order made by a judge of the circuit court is non-appealable." And for the very good reason that provision is made in sections 5 and 6, chapter 134, Code, for the correction of all such errors by the court committing them. Said section 6, provides that no appeal, writ of error or *supersedeas* shall be allowed or entertained by the appellate court from any such order or decree until such motion has been made and overruled in whole or in part by the trial court. The order of May 16th

was entered in open court when the case was heard upon the question of alimony and an allowance for costs and attorney's fees, etc. This question of allowance seems to be addressed to the sound discretion of the court or judge in vacation, he having full authority to make such allowances under section 9, chapter 64, Code, and it is only a question of the abuse of such discretion that the appellate court can deal with. In *Wass* v. *Wass.*, 42 W. Va. 460, it is held that the amount of alimony *pendente lite* allowed the wife in a divorce case is addressed to the sound discretion of the court under all the circumstances of the case, and the condition of the parties must also be taken into consideration; and in *Miller* v. *Miller* 92 Va. 196, it is held: "The amount of alimony to be decreed is within the sound discretion of the trial court, to be fixed according to the established principles, and upon an equitable view of all the circumstances of the particular case." In Hogg's Eq. Pr. page 582, it is said: "The circuit court is clothed with the exclusive right to award alimony *pendente lite* and the exercise of this discretion, which is a very broad one, will not be reviewed unless it is made to appear that it has been grossly abused." *Gusman* v. *Gusman*, 140 Ind. 133, (39 N. E. R. 918) ; *Sellers* v. *Sellers*, 141 Ind. 307, (40 N. E. 699). Appellant complains that the order granting the alimony and allowance was made when the case was submitted to the court for hearing. The pleadings and evidence taken in the case are very voluminous, there being nearly 460 pages in the record. To give the cause the consideration due to it was quite an undertaking for the court, while a cursory examination would satisfy the court that the plaintiff was entitled to relief, whether all she claimed or not. The pleadings and the evidence showed the financial condition of the parties and their condition in life so that the court had little trouble in arriving at what was a reasonable allowance and alimony. In *Bailey* v. *Bailey*, 21 Grat. 43, it is said: "The general rule is that the wife is entitled to the support corresponding to her condition in life and the fortune of her husband; and when delinquency of the husband has been established and the wife is the injured party, driven by his cruelty or other wrongful conduct from the comfort of domestic enjoyment she should be liberally supported." There seems to have been no abuse of the sound discretion of the court in making the allowance for alimony, as well as for fees

and expenses of the prosecution of the plaintiff's suit, the record fully sustaining the action of the court in that particular. As to the appointing of a receiver of the personal property under the order of July 15, 1902, after due notice to the defendants, the judge of the circuit court in vacation had full power under section 28, chapter 133, Code, to appoint such receiver in case the circumstances of the case warranted such action, if there was a necessity for it, such as "danger of the loss or misappropriation of the same or a material part thereof." Section 6823, 5 Thompson on Corporations, says: "Unless there is a statute giving the right to a receiver in a given state of facts no one can demand the appointment of a receiver therein *ex debito justitiae;* but the question whether or not a receiver will be appointed in a given case is addressed to the sound discretion of the chancellor under all the circumstances. The discretionary power possessed by courts of equity of appointing receivers or refusing applications for such appointment will not be interfered with on appeal except in cases where the discretion has been manifestly abused; this being the general rule as to the appellate review of discretionary action." Let us consider a little the facts in the case and see if they are such as to warrant the application by the court of this drastic remedy. This is a suit for divorce and according to the allegation of plaintiff's bill defendant was possessed of a large estate, worth at least $80,000, a large part of which consisted of real estate. This was at the instance of plaintiff tied up by injunction to await the action of the court so that defendant could not dispose of it and it was liable to any final decree that might be awarded in favor of plaintiff. Defendant had responded to the order of the court requiring him to pay $500, for costs and expenses of carrying on plaintiff's suit and for the payment of the $60 per month for plaintiff's temporary support. Was there any reason for the court taking possession by its receiver of the large personal estate of the defendant, thus depriving him of the use of the whole of his estate? This was a clear abuse of the judicial discretion, and so much of the decree or order of July 15, 1902, as appointed the Trust Company of West Virginia receiver of the personal property of the defendant, should be set aside and held for naught.

It is further insisted by counsel for appellant that it was error

to appoint the Trust Company of West Virginia as special receiver of the personal estate of defendant in the order of the 15th of July, 1902, without requiring bond for the faithful performance of the duties of receiver. Section 5, chapter 85, of the Acts of 1901, relating to the incorporation and regulation of Title and Trust Companies, provides that whenever such company shall become trustee, assignee, receiver, guardian, etc., the capital of such company together with such other assets as are. named therein "Shall be taken and considered as the security required by law for the faithful performance of such duties."

For the reasons herein stated so much of the order of February 10, 1902, as ordered the payment of $500 by defendant to plaintiff for temporary maintenance and appointing Kent B. Crawford receiver of the diamond ring of defendant, is set aside and held for naught, as is also so much of the order of February 22, 1902, as places plaintiff in the possession and custody of the residence and the property therein of defendant, which order while in itself not appealable because it was such error as could have been corrected on motion by the circuit court, and the cause being properly here by appeal from the decree of July 15, 1902, appointing the Trust Company of West Virginia special receiver, and said order being complained of in said particular this Court will make such order as the circuit court should have rendered and will set aside such part of said order of February 22, 1902, and so much of the order of July 15, 1902, as appointed the Trust Company special receiver is reversed and annulled, and the cause remanded to the circuit court for further proceedings to be had therein.

*Reversed.*